Total of 5 cases, 2 of them are being submitted without argument on the briefs later today. Namely, Appeal No. 06-3312, Sebula v. Department of Veterans Affairs. And Appeal No. 07-3034, King v. Department of Veterans Affairs. On the 3 case argument list, we'll hear argument first in Appeal No. 06-3289, McBeth v. Social Security Administration. Ms. Munson, welcome. Good morning. Thank you, Your Honor. Please proceed. Yes, this is an appeal from the MSVP. There are 4 major areas that we would like to highlight. The first one is the charge of impartiality. For that charge, we respectfully disagree with the administrative judge of the MSVP. There is absolutely no record evidence that the petitioner did anything other than what she was told or had been doing concerning her cases. The impartiality does not show that she had any involvement with the claimant, that she knew the person, that there was any personal gains for her, that she was never told, Ms. McBeth, was never told not to perform her duties. She was always doing what she thought she needed to do. Well, her job didn't involve telling appeals officers how they had to decide cases. Wouldn't you agree with that? Well, yes, I would agree that her... I thought one of the things she said on the phone was that you should decide this appeal favorably to the claimant. Well, it was my understanding that she said you should decide this appeal for the claimant. It had been going on for five years. It was a claim that was wanted. I understand that, but I'm just saying it doesn't seem like it was consistent with her job or her supervisor's instructions that she should be telling an appeals judge how to decide this case. I believe she was talking to an agency counsel. I understand correctly. You're exactly right. But she was saying how the case should be decided by the decision makers and saying that to an agency attorney. It was my understanding that she was saying that the case should be decided and filed the claim timely because it was overdue and the file had been lost. And she was trying to assist the agency counsel in reconstructing this file. I thought she told the agency counsel that it had to be granted, not just that it had to be decided and decided promptly, but that it had to be granted. It was my understanding that it had to be done quickly because it was pending for five years. Again, there's no record evidence that she was involved with the claimant. She got no personal gains. There was no involvement between the two individuals. But how does that figure in the ruling? I didn't see that the administrative judge concluded to the contrary. Well, I think there was a footnote, Your Honor, that said that he believed that they knew each other and that she became an advocate and misheard that her man traveled 50 miles to go to another Social Security office, which implied that they may have known each other and that she tended to do her friend a favor. And that is not, in fact, the issue. And nor is there any record evidence that supports that. I didn't see that the administrative judge depended on any speculation about a possible friendship between the two. Your Honor, I believe it's in his opinion a footnote. I'm not contesting what's there. I'm just saying, reading the decision, it doesn't seem like he made any reliance on the possibility or his speculation that they were friends. Again, I think that, Your Honor, reading his opinion, that was admitted as part of it. And if there are subsidiary findings, then that should be said. But he says at the end of the footnote to which you refer, he says, however, even if they had never met, my ruling would be the same. So, see to me, that's an indication that he's not relying on the speculation. The final sentence, quote, however, comma, even if the appellant and her had met for the first time on May 16, 2005, comma, my decision to sustain the first two charges would not be changed, period, end quote. Yes, Your Honor, I agree with you, and I agree with the administrative court judge in writing that, but again, subsidiary findings that are made, he's making the finding, drawing the comparison that they may have known each other, and then he's saying, but I wouldn't rely on it if my decision had been the same. If your decision would have been the same, in both due respects, to the administrative judge, why bother making this type of assessment? Jim, failure to follow directives on the ESRD claim, the agency, Mrs. Pierce says, Excuse me, Ms. Munson, still with respect to that first charge, wasn't it really an issue of credibility? Yes. Yes, Your Honor. So it's really an issue of credibility that you're challenging. Well, I'm not challenging the administrative court judge, his right to make a determination based on credibility. My challenge of that is set forth your subsidiary findings and your record evidence that shows how you got to point from point A to point B. But with respect to his finding on credibility, you're not challenging that? No, I cannot challenge on credibility if he says person A is more credible than person B. That, I understand, is case law. My argument with that is the failure to take into consideration all the evidence that was presented and to weigh this evidence and then make a credibility choice, I believe. And what evidence did he not take into account? Okay, he did not take into consideration, as far as I read in the briefs and whatnot, is that Ms. Hurd, she was not an advocate for the claimant, she did not know Ms. Macbeth before she came to this office, that the claimant also testified that, at the hearing, that Ms. Macbeth did A, B, and C and contorted Mr. Stevens. But her relationship with Ms. Hurd was not really at issue, was it? That's not what the basis of the administrative law judge's finding were. He found that basically it was a conversation between Ms. Macbeth and Mr. Stevens. And Ms. Macbeth indicated that she did not make some of those statements Mr. Stevens alleged. Yes. And based upon the testimony of Mr. Stevens, he believed Mr. Stevens over Ms. Macbeth. Based on what is the evidence that he has summarized and corrected, he did not. So was there substantial evidence based upon that particular evidence submitted through Mr. Stevens sufficient? Well, no, Your Honor, because there was more evidence that was presented from Ms. Macbeth and her witness, the claimant, as to what she heard from Ms. Macbeth. But you're asking us then to take the evidence into account and balance it off and make our own determination in lieu of what the administrative law judge found. No, Your Honor, I'm asking that the administrative law judge set forth all his findings with substantial evidence that would show that one person is more credible than the other. What is missing? I'm not quite clear. What do you think is missing from the rather detailed discussion of the Stevens testimony versus the Macbeth testimony that the administrative judge Klein sets forth in pages 3 and 4 and 5 and so forth of his opinion? What's omitted or what's deficient about that? What I believe would be deficient, Your Honor, is that he did not weigh the weight of the testimony of the claimant who heard this telephone exchange between Mr. Stevens and… Why do you say that? Excuse me, Your Honor? Klein heard the testimony of Ms. Herb. She was present. No, I understand that. And so she gave her recollection of the event. Macbeth gave her recollection of the event. Stevens gave his recollection of the event. His recollection of the conversation was very different. The administrative judge chose to credit the Stevens version, not the Macbeth and Herb version. But I'm still trying to figure out what's the mistake, that he didn't discuss Herb's testimony in more detail? That he did not acknowledge what Ms. Herb had said about Herb's concern, Mr. Stevens. Now, maybe he could have found both this Herb and additional in Herb. So the deficiency is that he didn't discuss Herb's credibility separate from Macbeth's credibility? Yes, and the reason is why he did not credit Ms. Herb. Okay. I just wanted to be sure I understood what you thought was missing. Okay. On the ESRD claim, fill in the following directions. The contradictory, the agency said on June 10th that Ms. Macbeth said, I'm not going to do the claim. And then on June 15th and 16th, there is an email stating, what's the status, has the claim come? That in itself is contradictory. And in weighing the credibility of witnesses, inconsistencies of testimony should be set forth toward the case law. And the fourth and most important is the discourtesy to members of the public. Hearsay is a municipal administrative proceedings. We don't challenge that. We don't argue that. What we are saying is there are controls with hearsay that must be met before this is accepted. What's the specific defect in the administrative judge's description of this incident involving Mr. Autry? Well, there is no cooperating evidence in the record. It is only the testimony, the hearsay testimony of the two disciplining officials. Well, I thought Ms. Macbeth's supervisor testified that after the complaint came to her attention later the same day, she went out to the reception desk and observed your client and the security guard there, and that they had been assigned to be there and had been there throughout the day. The testimony that Ms. Press, I believe is the official, went out to the security guard and asked did any agency employee make such a statement to Mr. Autry on the complaint day, and the security guard said no. I understand that, but I thought what you were suggesting is that there was an inadequate hearsay identification through Mr. Autry's hearsay letter that the person who had made the statements Autry complained about was somebody other than Ms. Macbeth. Well, there's no evidence of record that it was Ms. Macbeth. Well, that's what I'm trying to get to. It looked to me like there was evidence in two respects. First, Mr. Autry gave something of a description of the person who had made the statement he complained about, and that description seemed to apply to Ms. Macbeth, and secondly, the supervisor went out to the front desk and, as I recall, observed Ms. Macbeth still on that station with the security guard, and Mr. Autry had said there were two people there, a lady and a security guard, and the one who said the offending remarks was the lady, not the security guard. So when the supervisor goes out there a few hours later and sees the security guard and Ms. Macbeth, then the inference is that Ms. Macbeth is the person who made the statement to Mr. Autry that's complained of. But the supervisor went out to the security guard and inquired while Ms. Macbeth was sitting there. And the guard said no. I understand that. But as to the identification of whether it was Ms. Macbeth who made the statement, whatever its content was, there seems to be plenty of evidence that it was Ms. Macbeth. The dispute seems to be about exactly what she said. Autry has Autry's version of it and Ms. Macbeth has her version of it, I guess, and the security guard said what he said. Are you sort of suggesting that because two witnesses say X and only one witness says the opposite, that the administrative judge must go with the two witnesses? No, no. With all due respect, I am saying that, first of all, there is no evidence in the record as to what Mr. Autry said. Mr. Autry didn't testify at the hearing. Well, there is evidence in the form of hearsay of what Autry said in his letter and what Autry said in his face-to-face complaint with the supervisor. So it is hearsay, but it does describe the content of what he claims Ms. Macbeth said to him that morning. Well, we have an unsigned letter that's a typewritten letter. Well, it's unsigned and it's also misstated, but so what? We also have the recollection testimony of the supervisors to whom Autry complained face-to-face in some detail. So what's wrong with that evidence? It's true, it's hearsay, but why is it otherwise suspect? Because those are the two disciplinary, the proposing and the disciplinary official who actually took the action. You have nothing independent of them. And the cases that I have read state that hearsay, there must be some type of controls and it must be something more than just the two people. Well, the letter and the recollection of the interview by the supervisors are very consistent. In both those ways, Autry is telling a consistent story. Obviously, I don't know if it's true or not, but it's consistent. So why isn't the consistency of the letter with the oral complaint an earmark of reliability despite the fact that it is definitely hearsay? It was an unsigned letter to begin with. It was just a typewritten letter. Well, there's no indication that somebody else wrote it. So what's the problem, whether it was signed or unsigned? Well, there's no, again, there's no evidence that he signed it and it is not Mrs. Macbeth's burden to show he didn't sign it. Well, what I'm suggesting is that if there was some evidence that somebody else wrote this letter and Autry had nothing to do with it, that would impeach the reliability of the hearsay statement that the letter contains. But the fact that his name is on it but his signature isn't on it, I'm not sure that does impeach its reliability and suggest that somebody else wrote it, not him. Well, if he can't testify, then that's a ridiculous point. Well, that goes back to whether hearsay is admissible. I thought we agreed it depends on the circumstances and the earmarks of reliability. Well, I think we have your arguments on those four charges. Do you have anything separate to say about the penalty? The penalty? The penalty, based on case law, that the agency and the NSVP used a prior disciplinary action that was not in the proposed notice or notice approval. Well, it's true that the proposed but never adjudicated 14-day suspension was mentioned by the administrative judge along with the two-day suspension that had been fully adjudicated and along with a discussion by Judge Klein of the seriousness of the multiple incidents. Why wouldn't we be acting appropriately to treat his reference to the unadjudicated 14-day proposed suspension as error but harmless error? Because it seems very clear that even disregarding that, the administrative judge would have still concluded that this penalty was not grossly disproportionate to the proven conduct. Because he did consider it. Well, I'm granting, for purpose of the argument at least, that he not only mentioned it but that he relied on it in part. But I'm suggesting to you that when you read his whole discussion of penalty, it might seem very clear to a fair reading that even without any prior disciplinary record, he still would have upheld the penalty on the grounds that the incidents were multiple and serious, showed a pattern and suggested that he was not readily rehabilitatable and that therefore the penalty would have been upheld even if there had been no prior record. Again, Your Honor, that, with all due respect, is speculation. It's not written here. All right. Well, thank you. We'll hear from the government now. Mr. McNamara. Good morning. Good morning. Has it gone out of style for gentlemen to button their coats when they stand up? I apologize, Your Honor. Thank you. Please proceed. The MSPB's decision here is supported by substantial evidence and it should be applauded. There were four charges levied against Ms. Macbeth. We know all that. It seems like to be helpful to us and helpful to your client, the government, you need to say something responsive to the specific arguments that Ms. Munson has made. No point in reciting all the background and facts of the case. We've read the brief. We know what the facts are. What's your specific response to the arguments that she's made here today? Yes, Your Honor. The first argument that she makes is regarding impartiality, the charge that Ms. Macbeth demonstrated a lack of impartiality in performing her duties. And the issue there is the credibility of Mr. Stevens and Ms. Macbeth. The administrative judge's credibility determination is supported by substantial evidence and it should be applauded. Wait a minute. Don't go so fast. Why are you so sure that the evidence qualifies as substantial? One person says it happened and the other person said it didn't happen. That's right. Is it automatically substantial evidence if a witness says something? That's the end of the analysis? No, Your Honor. Then be more specific, please. The administrative judge here lays out very specifically what each of the witnesses testified to. He does not explain why he found one witness more credible. Well, that's exactly Ms. Munson's complaint. I thought you were going to answer her complaint. He does not explain very well, I should say. He does offer an explanation, but that explanation is not that he found. He does not say explicitly he found this witness to be more believable because of that. Doesn't Hillen v. Department of the Army bind each and every administrative judge of the Merit System Protection Board to set forth in detail according to an eight or ten factor formula exactly why one witness is being credited over another who gives contrary testimony? Hillen is the board's... Yes, no, Hillen does provide the internal... Okay, now are you saying that the findings he made here on this charge number one comply with the board decision binding on Klein in the Hillen case? The Hillen case requires... Come on, it's a yes or no answer. Either you think his opinion does comply with Hillen or it doesn't comply with Hillen. Yes. Then how can it comply with Hillen when he doesn't mention the majority of the Hillen factors on credibility assessment? Hillen requires that the AJ set out what are the factual issues in dispute, summarize the evidence, and then explain why the AJ is making the credibility determination. The AJ, again, explains why he's making the credibility determination, but you're correct on that. The AJ does not explicate all of the eight factors that Hillen requires. This court, however, is not bound by Hillen. Well, what if we choose to follow Hillen even though we don't have to? Hillen's a pretty good case. It's a 1981 case. It's not like new law. Every administrative judge in the board in every case ought to know that Hillen must be followed. They are bound by it, and why shouldn't we hold them to what their own supervisory body requires of them? Because this court, in its reviewing capacity, must ask the question... You know you're on standard review, of course, but the question for this court is, is the decision supported by substantial evidence or did the AJ abuse his discretion? That question, when we're talking about credibility, is broader than what Hillen says. Hillen says we have all these specific factors, but for this court... But we don't go back and revalue the Hillen factors, do we? Do we reweigh the evidence at that point? Do we have to do that? You do not. This court should defer to the administrative judge's credibility determination. But what if there's insufficient findings by the administrative law judge? How can we do that? If there are insufficient findings, if there is no substantial evidence in the record, then of course the court has to... It seems to me what he did, basically, was to say, I believe Mrs. Stevens over Ms. McBeth. That is essentially what he did, implicit in that decision. There was a hearing out here, and implicit in that decision was the administrative judge's observance of the witnesses, their testimony, and their demeanor. And Hurd testified also. Hurd did testify. So it was one against two. Stevens says X happened, and McBeth and Hurd said no, it didn't. Is that a fair assessment? No. Hurd testified that she did not hear what the conversation was about. That was Hurd's testimony. She did testify, but she said, I didn't hear the testimony. So it's one-on-one, not one-on-two. Yes, that's correct. And implicitly, in this decision, in AJ's decision, is the fact that he observed the demeanor of the witnesses. And when an AJ observes, when any trial judge observes the demeanor of a witness, that observation and the subsequent findings is entitled to death. You can't be right about that, or we could never reverse, because the fact finder always observes the demeanor of every live witness. If they're in the courtroom, they're observing your demeanor. And yet there are lots of cases where we reverse a finding that there wasn't substantial evidence to support a credibility determination. So what you just said can't be correct. Sometimes AJs will make credibility determinations that are not based upon live testimony. Obviously, in those cases, the demeanor doesn't come into play. I'm saying that the AJ's decision is entitled to death. I'm not saying that it is. The case law here is that the rule here is that the AJ's credibility determination is virtually unreliable. That's a nonsensical statement. It's true that the words virtually unreviewable appear in more than one opinion in this court. And I'm not sure what it's supposed to mean. But Judge Guyars is quite correct. In weighing whether substantial evidence supports the credibility determinations of the administrative judge, we have to look at all the evidence. And we have to give deference, particularly to the extent that an AJ relies on demeanor. If AJ had written in this opinion, Ms. Macbeth stammered and fumbled, coughed and sputtered, looked totally upset and disheveled, and I just thought she was making it up. That would be one thing. But I don't see anything like that in here. Yes, he saw her. Yes, he saw Mr. Stevens, of course. But he doesn't tell us anything about what he visually observed that told them which one was lying, assuming one of them was lying. So therefore, how are we to conclude that we should accept the credibility assessment? The decision is what it is, of course. The AJ explains the testimony of both sides, and he decides that one is more credible than the other. Because? His reason is what? His reason is really that he just found one side more believable than the other. Doesn't he have to articulate a reason? Isn't that the core ruling of Hill and many other cases, including of this court? The fact finder gets a lot of deference, but only if the fact finder explains why he chose witness A over witness B. He does offer an explanation. Where is it? It's on page 6 of the decision. He says, for all these reasons, I find the testimony to be more credible. And he talks before that sentence on page 6 of the appendix. I'm sorry. I'm not sure. Just to match up. We're with you. Okay. He agrees that Stevens was not hostile toward her, for he never lost sight of the fact that the claimant was heard and not the appellant. His concerns centered on Heard's claim. I don't want to characterize this decision. It is what it is. But he's essentially saying that... This makes no sense to me. The witness testified to A, B, C, D, E, F, and G for all these reasons I believe the witness. That's just a non sequitur. To describe what the witness said and then say I believe him doesn't make any sense. He said all those things, but the opposing witness said the opposite of all those things. So why are you choosing the first witness over the second witness? He doesn't give us much of a hint at all, I don't think. I'm not going to disagree with you. That's why you're relying upon the fact that he must have implicitly observed her demeanor. He doesn't at least attempt to offer an explanation. He doesn't use the word demeanor. He does not use the word demeanor, no. Does he use a synonym? No, he doesn't. Does he describe tone of voice or any other precipient observation? No, he doesn't. So what does he say? Stephens is a government employee so I have to believe him and I do believe him and Ms. Macbeth is just a citizen so she can't be trusted? I don't think that's not what he's saying. That's not what he says. You're moving into the opinion. The opinion is him. The decision is what? I'm just trying to find what a logical reason would be. If it's not something from tone of voice or facial expression or manner of presentation or anything like that, then what else could it be? It could also possibly be the fact that there is other consistent evidence in the record including Mr. Stephens' memorandum that Mr. Stephens wrote shortly following the incident. He can't bolster his own credibility by writing down what he orally relates in live testimony. That's ridiculous. That doesn't verify the truthfulness of what he says orally. It just means he's writing it and saying it. Maybe he's lying both times or maybe he's telling the truth both times. But you can't get any help on deciding lie versus truth by the fact that he wrote it as well as said it, right? Yes, sir. Then what do you have? What can you help us with here? Your Honor, I'm not sure that I can offer anything more than what's in the decision. Maybe if I could just move on to the second charge where Ms. Macbeth failed to comply with supervisory directives. These are, again, both supported by substantial evidence. She failed to process a claim that she was assigned. It's a mantra to just say it's supported by substantial evidence. That's the legal standard. You have to say that. We know you have to say that. Don't waste time saying it. We know that's your position. Tell us why the evidence was substantial. Don't just keep saying it was substantial, it was, it was, it was. Why does it have to be viewed as substantial? Yes, sir. It's substantial because there is evidence in the record, e-mail evidence in the record, the documents specifically here with the directive that Ms. Macbeth failed to comply with. Ms. Macbeth was instructed on June 16, 2005. She doesn't say she wasn't instructed. She doesn't say she wasn't e-mailed. She says, I felt I didn't know how to do this right, so I didn't want to do it, and I told my supervisors that. Now, I don't know if that's true. I don't know if that's a good explanation or not. It's not. But that's what she says, so why is that rejected? And that's irrelevant. She was instructed to process the claim. She said that she needed more training. She was given training. She still failed to process the claim. But she was given a checklist, as I recall. That's not quite the same as being trained how to process a certain type of claim. She was given step-by-step instructions. It was her job to process claims, and she was given step-by-step instructions that explained how to process this claim. There's testimony in the record that processing the claim via these step-by-step instructions was not all that difficult, and the woman who eventually processed the claim did so in 45 to 50 minutes. Well, maybe she had been extensively trained, and that's why she could do it so quickly or at all. How do we know? But Ms. McBeth essentially just offers an excuse for failing to comply with the directive. She still failed to comply with the directive, and that's the bottom line. Whoa, whoa, whoa, whoa. Judge Geiger. I'm not quite understanding the argument, Mr. McNamara. You're saying that she failed to comply with the directive, but there's no evidence to support that. Is that correct? So it's just a fact that somebody else did the job in 45 minutes while she couldn't do it in three weeks? She was told to process the claim on June 16th. Today was the word that her supervisor used. The claim was not processed. And she said, I'm not trained to do it. She was assigned the claim on June 7th. She said she asked for training. She was given step-by-step instructions and told that if you need more help, go ask the specialist. By June 16th, she hadn't done it. She was told on June 16th to process the claim today. She didn't do it. It had to be assigned to someone else on June 20th. She did not process the claim. And she didn't seek help either? And she didn't seek help. How do we know that? There's nothing in the record that shows that she sought help. If she had sought help, I think the assumption is if she had sought help, she would have been able to do it. The claim was very critical because it involved the payment of dialysis, was it not? It was. It was a time-sensitive claim, the claim that was in dire need. Wasn't it also incumbent upon a supervisor to make sure that when she gave the claim to the Ms. McBeth on June 7th, it would be done maybe on June 8th and June 9th, to be constant supervision to do that because of its criticality? That may be the case, but that's not an issue here. The issue here is Ms. McBeth's failure to comply with what her supervisor told her to do, not whether or not the agency was acting effectively or not. How about the supervisor? The supervisor was not charged with any kind of misconduct. The supervisor followed up with Ms. McBeth on a routine basis. Ms. McBeth simply failed to do what she was told to do. I understand your question, Honor, but the charge here is that Ms. McBeth is the one who failed to do it. I understand that, but I'm somewhat bothered by the fact that she was given a duty on June 7th, which was a very, very critical duty to perform, and the supervisor waited another two weeks before she said, have you had it done? I understand, Your Honor, but I can't explain it. I don't know why that was the case. I don't know what happened in the office. Because she did not perform the duties that was given to someone else, and then she was charged with dereliction of duty, essentially, but not performing within the two-week time period. That's correct, yes. That's what happened. I know that's what happened, but is that the proper approach to the issue? The proper approach was for the supervisor to tell Ms. McBeth to process the claim. She had plenty of time to do it. Ms. McBeth gave her a specific instruction to process the claim. Within a particular time frame, today, Ms. McBeth failed to do that. I don't know if overall this was effective, but it is indisputable that Ms. McBeth failed to comply with the directive that she received. I see that I've gone over my time. I know there are some issues that I haven't addressed. Well, if you want to address them very quickly, go ahead. The hearsay evidence here is the question is whether this evidence is inherently truthful or more credible than the evidence offered against it, and there are a number of other factors in the record that suggest that this evidence was truthful, including just the fact that Mr. Offrey, the declarant here, came into the office and spoke with the supervisor. The supervisor then recorded that conversation in email. Mr. Offrey provided a follow-up letter. Ms. McBeth's supervisor went out on hearing this complaint and verified that Ms. McBeth was seated at the table and was present. Also the question of removal and whether it was a reasonable penalty. Again, as we point out in the brief, the agency's consideration here of the prior discipline, which the agency did not mention in the notice of proposed removal, that was error. It was harmless error because the agency itself did not consider that prior discipline in effecting the penalty. Look at page 15 of Judge Klein's decision. The top of 15, and it really starts at the bottom of the prior page, refers to the proposed but never adjudicated two-week suspension for misconduct that's described there under three separate headings. Then the citation says, quote, see agency exhibit four. Is it the case that the agency lawyer put in as evidence of a disciplinary record an unproven, unadjudicated charge? Yes. Do you think that's proper? No. That's an invitation for the judge to rely on. Even though it was never adjudicated, there was never any decision that the conduct had been established. That's correct. So the agency invited the judge to make an error, and he went ahead and fell right into the trap and made an error. Yes, he did. That's pretty bad. Why doesn't that taint the penalty decision here? Because the agency's actual decision, this is the proceeding before the court, but the actual decision was not made, the final decision approval, was not made considering this concern. I think we're reviewing, perhaps among other things, the correctness of the AJ's ruling that this penalty was not grossly disproportionate to the proven misconduct. But if that penalty reasonableness ruling depended in any significant way on the 14-day incident, which was never proven, then it seems to me it's tainted by that, and we'd have to send it back to the AJ. The question is, I don't think that's correct. I don't think you can say that it's tainted. I think the question is, as a whole, looking at whether or not the AJ's decision about this penalty was reasonable, whether the charges support the penalty. But he doesn't say that. He says at the top of page 15 about the final paragraph in the first two lines, based on the series of the charges and specifications that were sustained in this appeal and her prior disciplinary record, which he's just described as including the two-day incident proven and the 14-day incident not proven. Yes, sir. So he's overtly relying on a record that is, at least in substantial part, 14 out of 16 days improper. Yes, sir, and that's wrong. How can you say it didn't affect his decision? He tells us it did affect his decision because he says, I'm relying both on the series of the charges and the prior disciplinary record, 14-16ths of which shouldn't have been in there. Yes, but the question is whether or not that, you're right, he says that he's relying on it, but the question is whether or not that reliance was harmful or harmless. And the other charges here and the two days he's mentioned, which was for some serious conduct, those charges and that prior discipline does support the penalty. How do we know? If he was relying 80% on the prior record and only 20% on the series of the charges, then I don't think I can agree with you. If we flip it around and he was relying 80% on the series of the charges and only 20% on the prior record, then maybe you're right. But since he doesn't give us any clue of the relative reliance, how can we know whether it's harmless error? You're right, but he does not explicitly say, he does not set up a proportion. He talks about it only very briefly. That's the best that… Maybe he should have had a footnote here like he had back at footnote 7. Even aside from both prior misconduct, the seriousness of the charges alone would justify the removal. If he had said that, you might have a very strong position, but he didn't say anything like that, did he? He did not, but that would have been helpful. So why shouldn't we send it back and have him do it right? Because ultimately, if the court sustains all of the charges, they are serious and they support the penalty of removal. For these reasons, the more sincere should be informed. Thank you, sir. Ms. Munson, we'll give you two minutes of restored time, even though you actually used up all your time. Of course, you had lots of questions. Yes. So please try to be brief. Yes, I will. On the disciplinary notice, the second disciplinary notice, agency official testified on the appendix 172 that that second disciplinary action was considered in formulating the penalty of removal. And on the Stevens matter, it is Stevens, appendix page 3, that makes the argument that Ms. Hurd, the conversation has been between him and Ms. Macbeth. And on appendix A40 and 41 is where Macbeth informs the supervisor I cannot do the ESRD claim because I need additional training. That is in the appendix. Thank you kindly. We thank both counsel for taking the appeal under advisement. Thank you.